**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| KE ARMS LLC, | No. CV-20-01625-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| GWACS Armory LLC, *et al.*, | |
| Defendants. | |

At issue is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, and, in the alternative, to Transfer (MTD, Doc. 9). The Court also considered Plaintiff's Response (Resp. Doc. 11), and Defendants' Reply (Doc. 12). Plaintiff's Complaint requests declaratory relief and brings tort and contract law claims against GWACS Armory, LLC, GWACS Defense Inc., Joe Gudgel, and Russell Anderson (collectively, "Defendants"). Because there is stayed litigation in the Northern District of Oklahoma that would completely settle all issues in Plaintiff's declaratory relief request, the Court will decline to exercise jurisdiction under the Declaratory Judgment Act. The Court further grants Defendants' Motion to Dismiss Plaintiff's tort law claims for failure to state a claim and will transfer the contract law claim to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a).

**I.    BACKGROUND**

There are currently two proceedings relating to the Non-Disclosure Agreement signed by Plaintiff KE Arms, LLC ("KEA") and Defendant GWACS Armory, LLC

("Armory") ( the "KEA NDA"). In the matter before this Court (the "Arizona Litigation"), KEA requests declaratory relief stating that at all times KEA has complied with its obligations under the KEA NDA and brings related claims for Tortious Interference, Business Disparagement, and Breach of the Covenant of Good Faith and Fair Dealing (Doc. 1-3, "KEA Compl."). In the Northern District of Oklahoma matter, Case 4:20-cv-00341-CVE-FHM, Armory sued KEA for breaching the KEA NDA as well as other parties for related conduct (Doc. 1-4, "Armory Compl.") (the "Oklahoma Litigation"). Because both the Court's decision not to exercise jurisdiction over KEA's request for declaratory relief as well as its decision on KEA's related claims are dependent on the Oklahoma Litigation, the Court will outline KEA's allegations as well as the relevant Armory allegations.

There are multiple parties involved in the two litigations. KEA and Armory are both limited liability companies that manufacture firearms. KEA is based in Arizona while Armory is from Oklahoma. GWACS Defense, LLC ("Defense") is a Delaware corporation that manufactures acoustical gunshot detection systems and Brownells, Inc. ("Brownells") is a large firearms dealer that operates throughout the United States. SST is also a firearms manufacturer and Cavalry Arms ("Cavalry"), is a former firearms manufacturer that developed the polymer lower receiver CAV-15 at issue in both litigations. Jud Gudgel and Russell Anderson are both individuals who reside in Oklahoma and are employed by Defense and Armory. Shawn Nealon is an individual who owned Cavalry. Finally, Russell Phagan is an individual who worked for Cavalry, SST, Armory, and currently is employed by KEA. (Armory Compl. ¶¶ 1-6, 12, 16, 25-26.)

The dispute in both actions centers around the ownership and use of the intellectual property ("IP") for the CAV-15 lower polymer receiver. There are multiple NDAs and purchase agreements outlining the various parties' obligations with regards to the IP. KEA's Complaint for declaratory relief and state law tort claims focuses solely on the KEA NDA and Armory's subsequent cease and desist demand letter (the "Demand"). Armory's complaint focuses on both the KEA NDA and the purchase agreement between Armory

and SST ("SST Purchase Agreement") as well as the NDAs signed between Armory and Brownells ("Brownells NDAs").

### A. KEA Allegations

KEA filed its Complaint on April 27, 2020, alleging that KEA and Armory entered into the KEA NDA on June 2, 2015. According to the Complaint, the KEA NDA covers certain proprietary information but expressly excludes proprietary information that was already in KEA's possession at the time of Armory's disclosure, information that was available in the public domain or through a third party, or information that was independently developed by KEA. The KEA NDA further provides that either party may offer or develop products that are similar to products the other party offers or plans to offer. (KEA Compl. ¶¶ 12-13.) KEA subsequently developed products that were "similar to the products offered by [Armory]" using only proprietary information not subject to the KEA NDA and thus at all times complied with the KEA NDA. (KEA Compl. ¶¶ 14-15.) The Complaint lacks any detail as to what products KEA developed or with whom it developed them. KEA further alleges that on April 7, 2020, Mr. Anderson, representing Defendants, sent the Demand to KEA, which contained statements Defendants knew to be "false and disparaging" about KEA, including a claim that it had violated the terms of the KEA NDA. (KEA Compl. ¶¶ 16-18.) Mr. Anderson subsequently sent the Demand a second time to KEA on April 21, 2020, but this time copied "one of KE Arms largest customers/distributors." (KEA Compl. ¶ 19.)[1] KEA's Complaint requests declaratory relief that it did not violate the KEA NDA and asserts a claim for Breach of the Implied Covenant of Good Faith and Fair Dealing against Armory as well as claims for Tortious Interference and Business Disparagement against all Defendants.

### B. Armory Allegations

In the Oklahoma litigation, Armory alleges that SST purchased the IP for the CAV-15 polymer lowers and the designs for the MKI and MKII, which are products that use the CAV-15 IP, from Cavalry in 2010, which Armory subsequently acquired from SST

---

[1] Based on a review of the Demand, the Court presumes this distributor to be Brownells. (Resp. Ex. 5.)

pursuant to the Purchase Agreement in February 2013. (Armory Compl. ¶¶ 17, 20.) KEA and Armory had ongoing discussions regarding the CAV-15 IP and ultimately entered the KEA NDA, which Armory alleges prohibited KEA from both using and disclosing Armory's proprietary information relating to the CAV-15 IP. (Armory Compl. ¶¶ 25-28.) Additionally, from 2015 through 2018, Armory had business discussions with Brownells about the CAV-15 IP and with both parties about partnership opportunities for the development of the new MKIII model. Armory entered into two separate NDAs with Brownells in 2013 and 2016 that protect the CAV-15 IP. (Armory Compl. ¶ 42.)

Armory further alleges that near the end of February 2016, KEA purchased two boxes of "Blue prints" and one thumb drive containing information pertinent to the CAV-15 IP from Defendant Shawn Nealon, who possessed the information from his time as owner of Cavalry. (Armory Compl. ¶ 31.) Subsequently, around September 2018, KEA and Brownells colluded to use Armory's IP for the CAV-15 to create polymer lower receiver products named MKIII. This all took place without Armory's knowledge or consent. (Armory Compl. ¶¶ 47-50.) Armory's Complaint does not discuss the Demand sent to KEA and Brownells.

Based on these allegations, Armory brought breach of contract claims against KEA for violation of the KEA NDA, Brownells for violation of the Brownells NDA, and SST for violation of the Purchase Agreement, as well as a Trademark Infringement claim against KEA and Brownells for their use of the MKIII mark, and a host of other related claims.

On January 21, 2021, the Northern District of Oklahoma granted KEA's Motion to Transfer Venue or Stay Proceedings and stayed the case pending a ruling from this Court on Defendants' Motion to Dismiss ("OK Order"). The Northern District of Oklahoma found that the first to file rule applied but stayed the case to allow this Court to determine whether to exercise jurisdiction over KEA's claims. (OK Order at 16.). KEA subsequently requested that this Court take judicial notice of the order and the court's findings (Doc. 15), and Defendants filed a motion in response arguing that while taking judicial notice of the

1 existence of the order was appropriate, KEA's request for judicial notice of the findings
2 was overbroad. (Doc. 16.).

## II. LEGAL STANDARD

### A. Declaratory Judgment

Under the Declaratory Judgment Act, district courts have the "unique and substantial discretion" to decide whether to issue a declaratory judgment. *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995). The Declaratory Judgment Act states that "courts *may* declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a) (emphasis added). Accordingly, a district court is under no compulsion to exercise jurisdiction. *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942).

Where parallel state proceedings exist, "there is a presumption that the entire suit should be heard in state court." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (citation omitted). In such situations, Courts should avoid gratuitous interference as it would be uneconomical and vexatious for a federal court to proceed with a declaratory judgment action in these situations. *Wilton*, 515 U.S. at 282–83 (citation omitted). However, the existence of a pendent state action does not automatically bar a request for federal declaratory relief. *Chamberlain v. Allstate Ins. Co.*, 931 F.2d 1361, 1367 (9th Cir. 1991). Courts consider several factors in determining whether to exercise jurisdiction or dismiss or stay the declaratory judgment proceeding. These factors include the need to: (1) avoid unnecessary determination of state law issues; (2) discourage litigants from filing declaratory actions in an attempt to forum shop; and (3) avoid duplicative litigation. *Dizol*, 133 F.3d at 1225; *Chamberlain*, 931 F.2d at 1367. In addition to the foregoing factors, the Ninth Circuit has adopted the following additional considerations:

> [W]hether the declaratory action will settle all aspects of the controversy; whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a 'res judicata' advantage; or whether the use of a declaratory action will result in entanglement between the federal and state court systems. In addition, the district court might also consider the convenience of the parties, and the

availability and relative convenience of other remedies.

*Dizol*, 133 F.3d at 1225 n.5 (citation omitted).

When declining to exercise jurisdiction, the district court is "authorized . . . to stay or dismiss" the action. *Wilton*, 515 U.S. at 288.

### B.     Fed. R. Civ. P. 12(b)(6)

Rule 12(b)(6) is designed to "test[ ] the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive dismissal for failure to state a claim pursuant to Rule 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While "a complaint need not contain detailed factual allegations [] it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). However, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hospital*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F.Supp.2d 1035, 1042

(C.D. Cal. 1998). The court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; *see also Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (noting that the court may take judicial notice of undisputed "matters of public record"). The court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels–Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

## III. ANALYSIS

### A. Judicial Notice

Pursuant to Fed. R. Evid. 201, the Court will take judicial notice of the existence of the complaint filed by Armory on July 15, 2020, in the Northern District of Oklahoma and the allegations therein, as well as the court's January 21, 2021 order. The Court will not take the allegations in Armory's complaint as true; rather it will consider Armory's filing of the complaint and the specific allegations when determining whether the absolute privilege should apply to KEA's state law tort claims.

Regarding the Northern District of Oklahoma's order, KEA requests that the Court take judicial notice of both the order as well as "all of the findings" in the order. (Doc. 15 at 3.) The Court declines KEA's request. Where a court takes judicial notice of a different court's order, it does not take all of the facts within that order as true. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (stating that not all facts within a judicially noticeable document are judicially noticeable for their truth); *Lee*, 250 F.3d at 690 (clarifying that a court should not take judicial notice of another court's opinion "for the truth of the facts recited therein, but for the existence of the opinion."). It thus follows that it would be improper to take judicial notice of all of the order's findings. KEA cited no caselaw in support of its request. Here, the Northern District of Oklahoma court's findings pertain to the application of the first to file rule, which requires a different analysis than whether a court should exercise jurisdiction over a party's request for declaratory

judgment. The Court thus denies KEA's request to take judicial notice of all of the Northern District of Oklahoma's findings.

### B. The Court Declines to Exercise Jurisdiction over KEA's Request for Declaratory Judgment

Although KEA initially filed its Complaint for declaratory relief in state court, the removal of the matter to federal court dictates that the Court determine whether to exercise jurisdiction under the Declaratory Judgment Act. *See Golden Eagle Ins. Co. v. Travelers Cos.*, 103 F.3d 750, 753 (9th Cir. 1996) (when a state law declaratory judgment claim is removed to federal court under diversity of citizenship jurisdiction, "the claim remain[s] one for declaratory relief, but the question whether to exercise federal jurisdiction to resolve the controversy bec[omes] a procedural question of federal law."), *overruled on other grounds by Dizol*, 133 F.3d at 1224-26 (en banc).

Multiple factors outlined in *Dizol* dictate that the Court should decline to exercise jurisdiction. First, exercising jurisdiction may lead to duplicative litigation, whereas the Oklahoma Litigation would guarantee complete relief. Both the Arizona and Oklahoma Litigations require the determination of whether KEA breached the KEA NDA by working with Brownells to create products using the CAV-15 IP. Granting declaratory relief would settle that issue based on res judicata principles; however, if this Court denied declaratory relief, Armory would then need to proceed with the Oklahoma Litigation in order to vindicate its claim for breach of the KEA NDA. It would waste judicial resources for two federal courts to hear the same issue twice. Avoiding this type of duplicative litigation and waste of judicial resources is imperative whether the parallel action is in state court or federal court. *See Knapp v. Dupuy Synthes Sales, Inc.*, 983 F. Supp. 2d 1171, 1176-77 (E.D. Cal. 2013) (collecting cases and stating that parallel litigation in a federal district court has the same effect as parallel litigation in a state court); *see also TSYS Acquiring Solutions, LLC v. Elec. Payment Sys., LLC*, No. CV-10–1060-PHX-DGC, 2010 WL 4642112 at *7 n. 2 (D. Ariz. Nov. 9, 2010) (holding that parallel action in federal court located in the same district dictates that court decline to exercise jurisdiction over declaratory judgment claim).

On a related note, even this Court's granting KEA's request for declaratory relief likely would not settle all of Armory's claims against Brownells, SST, Mr. Phagan, as well as the misappropriation and trademark infringement claims that arguably are not completely dependent on the KEA NDA.[2] While there is overlap between the relevant allegations that make up Armory's claim for breach of the KEA NDA and its other claims, this circumstance actually cuts in favor of declining jurisdiction over the declaratory action. As set forth above, this Court's exercise of jurisdiction would waste judicial resources, as both courts would have to analyze the same allegations; therefore, the Northern District of Oklahoma should hear all of Armory's claims.[3]

Finally, while the parallel proceeding is not in state court, Oklahoma law controls the interpretation of the KEA NDA, which the Northern District of Oklahoma court is better equipped to handle. *See Van Dusen v. Barrack*, 376 U.S. 612, 645 (1964) ("There is an appropriateness ... in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself."); *Knapp*, 983 F. Supp. 2d at 1177.

---

[2] This issue illuminates why the Court, *supra*, declined KEA's request to take judicial notice of all the findings in the Northern District of Oklahoma court's order. In the context of determining whether the first to file rule applies, the court stated that

> The central issue that will determine whether GWACS recovers against any of the defendants is whether GWACS can prove that the defendants violated the NDA by using proprietary information to develop a competing product. The Court finds that both lawsuits require a determination of whether KEA and the other defendants named in this case violated the NDA, and this is a substantial issue supporting application of the first to file rule.

(OK Order at 13.) This Court agrees that the KEA NDA is a central issue to Armory's claims and supports application of the first to file rule. But when analyzing whether exercising jurisdiction would settle all aspects of the controversy, it is not clear that all of Armory's other claims would be absolutely barred by granting declaratory relief on the issue of the KEA NDA. Armory brought claims under multiple other contracts as well as claims for Misappropriation of Trade Secrets, Trademark Infringement, Trade Dress Infringement, Copyright Infringement, and Misappropriation of Intellectual Property that it avers are not dependent on the KEA NDA. (Doc. 16 at 2.) This does not mean that this Court disagrees with the Northern District of Oklahoma's findings. Rather, because the courts are deciding different issues, the analyses and resultant findings will invariably differ.

[3] Questions exist as to whether this Court would have jurisdiction over the other defendants in the Northern District of Oklahoma action. As but one example, the SST Purchase Agreement—the basis for Armory's breach of contract claim against SST—contains a forum selection clause in Tulsa, Oklahoma. (OK Order at 7.)

- 9 -

In declining to exercise jurisdiction, the Court acknowledges that KEA filed its Complaint in Arizona prior to Armory's initiation of the Oklahoma Litigation and that the Northern District of Oklahoma held that the first to file rule applied. Timing of the filings is but one factor for the Court to consider and does not mandate that the Court exercise jurisdiction over KEA's request for declaratory judgment. *Pacesetter Sys., Inc. v. Medtronic*, 678 F.2d 93, 95 (9th Cir. 1982) ("first to file rule is not a rigid or inflexible rule to be mechanically applied, but rather is to be applied with a view to the dictates of sound judicial administration."). In fact, the Northern District of Oklahoma stayed the case rather than transferring venue so that this Court could determine whether to exercise jurisdiction, which is a "responsibility that district courts are duty-bound to take seriously." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). Here, judicial economy and the "conservation of judicial resources" outweigh KEA filing first.

### C. KEA's State Law Tort Claims are Dismissed for Failure to State a Claim

#### 1. Preliminary Issues

As a preliminary matter, the Court addresses three issues related to KEA's Complaint and the subsequent briefing of the Motion to Dismiss. First, KEA's Complaint alleges that Defendants sought to harm the relationship between KEA and its "potential customers/distributors," even though the Complaint only alleges that one customer/distributor was actually copied on the Demand. (KEA Compl. ¶¶ 19, 35-38, 43-45, 48.) And, although KEA's Response to Defendants' Motion to Dismiss identifies Brownells as the customer/distributor copied on the Demand, the Complaint fails to expressly name Brownells. For purposes of the Motion to Dismiss, the Court will assume that Brownells is the only customer/distributor who received the Demand on April 21, 2020.

Second, in support of its Response to Defendants' Motion to Dismiss, KEA cites to multiple declarations containing allegations that are not located in the Complaint. (Resp. at 15.) Likewise, Defendants cite to facts located in the declarations of Russell Anderson and Jud Gudgel in order to explain why they found it necessary to copy Brownells on the Demand. (Reply at 8.) Any consideration of material outside of the pleadings that has not

been judicially noticed would convert Defendants' Rule 12(b)(6) Motion into a motion for summary judgment. *Lee*, 250 F.3d at 688; Fed R. Civ. P. 12(d). Therefore, the Court will only consider the allegations set forth in KEA's Complaint as well as the public record in the Oklahoma Litigation when evaluating each parties' arguments.

Finally, KEA argues that the Court should not entertain Defendants' Rule 12(b)(6) Motion because they failed to include a certification pursuant to LRCiv 12.1. Defendants counter that the Certification filed at Doc. 9-3 meets the local rule's requirements, as it illustrates that they "sought to have all claims against all Defendants dismissed on various grounds and that Plaintiff declined." (Reply at 7.) Upon review, the Certification does not expressly state that Defendants informed KEA of their belief that the Demand was protected by absolute privilege. However, it does state that the parties discussed the validity of KEA's claims, which the Court will presume includes the issue of privilege. Furthermore, KEA does not argue that it would have amended the Complaint or that it was prejudiced in any way by Defendants' alleged failure to include proper certification. For these reasons, the Court will consider and rule on Defendants' Rule 12(b)(6) Motion.

## 2. The Demand was Subject to Absolute Privilege

Defendants argue that KEA's state law tort claims of Business Disparagement and Tortious Interference should be dismissed because the April 21, 2020, Demand was sent to KEA and Brownells in anticipation of litigation and thus subject to absolute privilege. According to the Restatement (Second) of Torts (1977), "A party to a private litigation ... is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of… a judicial proceeding in which he participates, if the matter has some relation to the proceeding. Restatement (Second) Torts § 587. According to the Arizona Supreme Court, "both content and manner of extra-judicial communications must bear 'some relation to the proceeding.'" *Green Acres Trust v. London*, 141 Ariz. at 614, 688 P.2d at 622, quoting *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 697 (8th Cir.1979). The court further stated that "the recipient of the extra-judicial communication [must] have some relationship to

- 11 -

the proposed or pending judicial proceeding for the occasion to be privileged, and "whether the privilege exists is a question of law for the court… and may be properly raised in a motion to dismiss." *Id.* at 621-22. Importantly, "for the judicial privilege to apply, the recipient of the communications must have a direct interest in the litigation or possess evidentiary information directly relevant to it." *Johnson v. McDonald*, 197 Ariz. 155, 160 ¶ 19, 3 P.3d 1075, 1077 (App.1999).

Here, the facts alleged in KEA's Complaint and Armory's subsequent complaint in the Oklahoma Litigation support Defendants' contention that the absolute privilege applies to the Demand. Brownells has a "direct interest" in the Oklahoma Litigation that proceeded the Demand, as it is an actual party to the litigation.[4] Defendants sent the Demand to KEA on April 21, 2020, copying Brownells, which informed the parties that KEA's and Brownells's development of a new product using the CAV-15 IP was "in direct conflict with [Armory's] intellectual property rights" and violated the KEA NDA. The Demand expressly noted that KEA and Brownells were using the MKIII design that Armory had previously shared with KEA and stated that the parties must "Cease and Desist the use, manufacture and marketing of any designs, IP, and other likenesses to the GWACS Armory CAV 15 MKII and MKIII immediately." Finally, the Demand stated that Armory would "be forced to take legal action to protect our intellectual property" if KEA did not cease and desist or otherwise reach a satisfactory agreement with Armory. (Resp. Ex. 5.) Subsequently, on July 20, 2020, Armory filed its complaint in the Oklahoma Litigation against KEA and Brownells for multiple causes of action directly related to the conduct discussed in the Demand, including breach of the KEA NDA against KEA, and Trademark Infringement against KEA and Brownells for their use of the MKIII mark. Armory's complaint further alleged that Brownells violated the 2016 Brownells NDA due to its collusion with KEA to "willfully and maliciously misappropriate KEA's IP. (Armory Compl. ¶¶ 47, 111-14.) While the Demand did not expressly mention the 2016 Brownells

---

[4] KEA filed its Complaint prior to the Oklahoma litigation and thus could not allege how it did or did not affect the Demand's potential privilege. However, KEA did have an opportunity to address the Armory's complaint in its Response and may address it if KEA decides to refile the state law tort claims as counterclaims in the Oklahoma Litigation.

NDA, it discussed the actions forming the basis for the breach of contract claim against Brownells. (Resp. Ex. 5; Armory Compl. ¶ 113.)

KEA contends that the Demand is not protected by absolute privilege because it was sent prior to the initiation of any legal proceedings. (Resp. at 14.) In support, KEA quotes Restatement (Second) of Torts § 586 and *Green Acres Trust*, 688 P.2d at 622 as stating "[T]he bare possibility that the proceeding might be instituted is not to be used as a cloak to provide immunity for defamation when the possibility is not seriously considered." This quote is inapplicable to the instant case because Armory did not just seriously consider the possibility of instituting a legal proceeding; it actually did file a complaint against KEA and Brownells for the issues discussed in the Demand. Importantly, KEA's Complaint does little in the way of making sufficient allegations to rebut the argument that Defendants had absolute privilege to send the Demand. The Complaint only addresses the issue of absolute privilege by stating "no privilege or justification exists to allow the Defendants to, among other things, contact the prospective customers/distributors of KE Arms and make false and disparaging statements about KE Arms." (KEA Compl. ¶ 38.) This type of conclusory statement is insufficient. Plaintiff cannot simply allege that the privilege is inapplicable without proffering allegations illustrating why it does not apply. *Ashcroft*, 556 U.S. at 680.

KEA further contends that applying the absolute privilege would be equivalent to giving Armory an absolute privilege "to interfere with KE Arm's business." (Resp. at 14.) KEA appears to base this contention on its allegation that Armory's copying of Brownells was equivalent to "contacting the prospective customers/distributors of KE Arms and making false and disparaging comments about KE Arms." (KEA Compl. ¶ 37.) Not only does KEA fail to provide anything other than conclusory allegations on the matter, but Brownells's involvement – through the Brownells NDA and its partnership with KEA to manufacture and distribute the MKIII with the CAV-15 IP – makes it more than an uninvolved third party KEA customer whom Armory decided to contact in order to harm KEA's business.[5] Indeed, as discussed above, Armory sued Brownells in the Oklahoma

---

[5] Even if Brownells was not a party to the Oklahoma litigation, the absolute privilege may still have applied. *See Hall v. Smith*, 214 Ariz. 309, 313 (holding that contacting non-party

- 13 -

Litigation for conduct directly discussed in the Demand. While it is not this Court's role to opine on the validity of the allegations in the Oklahoma Litigation, the Court notes that KEA did not move to dismiss Armory's complaint in Oklahoma for failure to state a claim.

Under the facts alleged in KEA's Complaint as well as the subsequent filing of Armory's complaint in the Oklahoma litigation, KEA's tort claims are barred by absolute privilege and thus dismissed without prejudice. KEA may refile the state law tort claims as counterclaims in the Oklahoma litigation only if it is able to cure their defects.[6]

### D. KEA's Breach of the Covenant of Good Faith and Fair Dealing Claim shall be Transferred under 28 U.S.C. § 1404(a)

The Court will transfer KEA's remaining claim for Breach of the Covenant of Good Faith and Fair Dealing to the Northern District of Oklahoma. Under Section 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). A district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). In making this determination, a court must balance numerous factors, including: (1) the state that is most familiar with the governing law, (2) the plaintiff's choice of forum, (3) the respective parties' contacts with the forum, (4) the contacts relating to the plaintiff's cause of action in the chosen forum, (5) the differences in the costs of litigation in the two forums, (6) the availability of compulsory process to compel attendance of unwilling, non-party witnesses, and (7) the ease of access to sources of proof. *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000).

Transfer under Section 1404(a) is appropriate for the convenience of all parties to the litigation. Whether Defendants breached the covenant of good faith and fair dealing in

---

to litigation was protected by absolute privilege where third party "had a close or direct relationship to the [legal] proceedings."). As discussed above, Brownells is an actual party to the Oklahoma Litigation and thus has a sufficiently close relationship to the proceeding.

[6] Had the Court not dismissed KEA's state law claims under Rule 12(b)(6), it would have transferred them to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a).

- 14 -

the KEA NDA necessarily involves the same issues and facts as Armory's claim against KEA for breach of the KEA NDA. As discussed above, the Court declined to exercise jurisdiction over KEA's request for declaratory relief so that Armory's claim for breach of contract could be heard in the Northern District of Oklahoma. It would be an unnecessary inconvenience to the parties and any potential witnesses to argue and testify in two separate actions in Arizona and Oklahoma. Furthermore, justice will be better served by allowing one court to decide the multitude of overlapping issues, which will avoid the possibility of conflicting findings.

**IT IS THEREFORE ORDERED** declining to exercise jurisdiction and dismissing Plaintiff's request for declaratory relief. (Docs. 1, 1-3).

**IT IS FURTHER ORDERED** granting in part and denying in part, as moot, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim, and, in the alternative, to Transfer (MTD, Doc. 9), as follows:

1. Plaintiff's state law claims for Tortious Interference and Business Disparagement for failure to state a claim are dismissed without prejudice;
2. Plaintiff's Breach of the Covenant of Good Faith and Fair Dealing claim is transferred to the Northern District of Oklahoma pursuant to 28 U.S.C. § 1404(a);
3. Defendants' Motion to Dismiss that claim for lack of personal jurisdiction is mooted by the transfer of that claim.
4. Defendants' Motion to Dismiss Plaintiff's request for declaratory relief for lack of personal jurisdiction is mooted by the Court's declining to exercise jurisdiction on other grounds.

**IT IS FURTHER ORDERED** directing the Clerk of Court to terminate this matter.

Dated this 8th day of March, 2021.

Honorable John J. Tuchi
United States District Judge